colleague, Judge Adelman, who is visiting, and our guest. It's a wonderful program we have in the circuit where district judges have an opportunity to sit with us, and it's a great opportunity for those of us on the Court of Appeals and on the District Court. So welcome, Judge Adelman. Thank you. We're ready for our first case, Kemlite Labs v. NLRB. Mr. Hutchinson. Thank you, Your Honor. Good morning. May it please the Court. My name is Leland Hutchinson, and I am appearing here for cross-petitioner Amglo Kemlite Laboratories. We are here to ask the Court to deny enforcement of the Board's order for two reasons. First, the General Counsel's elemental showing of the unfair labor practice was not proved according to the evidence of record, and second, that issue was not waived under Section 10e of the Act by Amglo's failure to seek a rehearing. Turning to my first issue, this case was tried by General Counsel on a termination theory, but the Board rejected that theory. The ALJ in this case had found an accelerated layoff violation, but both sides accepted that, and the Board rejected that as well. What the Board did was find an 8A1 violation having to do with the transfer of work between Amglo's Bensonville facility and its facility in Juarez, Mexico. The problem with this, on this factual record, is that Amglo had a long pre-strike history of transferring work between Bensonville and Juarez, and there was no proof by General Counsel that the rate of that work transfer increased after the strike or at a time correlating with the strike from which you could assume or infer the proof of an adverse action against an employee. The basic burden the General Counsel has to sustain in a case like this is to show that an adverse action affected employees. Now here there were 22 employees who went on strike and were not recalled immediately, and in fact not recalled at all. And in terms of our review of the Board's order, do we look at this through the lens of a highly deferential standard? You do, but you still have to find the basic evidence that they proved the unfair labor violation in the first case, Your Honor. I liken this by analogy to a proof of lost profits in a civil damages case. In a case like that, this Court would classically accept that the earnings of the business before the injury were at one level and after were at a different level, and there would be a statistical showing that the change in level was the amount of the damage. Now here, there can be no adverse action except if the rate of work transfer before the strike, which of course cannot be in retaliation for the strike, was different and lower than the rate of work transfer after the strike. Well, the letter given to the 22 employees said that they were not being brought back based on part on the move to Mexico. Is it your argument that the Board was required to find that that letter was a lie? No, that letter may show motive, and it may show that the nature of some work was transferred. My argument is that the Board's, the General Counsel's basic burden is to quantify the amount of the work transferred, and that is not a remedy evidence. Now obviously, the General Counsel has argued, and they are correct, that they can bifurcate this type of a claim so that the basic unfair labor practice can be found in one proceeding, but in fact, in an enforcement proceeding, the amount of make-good damages, the number of employees who haven't found additional jobs, remedy evidence like that can be allocated to a second proceeding, but there aren't, and that's the Shertan case in which the United States Supreme Court said that as a means of tailoring the remedy to suit the individual circumstances of each discriminatory discharge, you can have bifurcation. That's 467 U.S. 902, but that isn't what happened here. It is the basic burden of General Counsel to show the amount of increase of the work transfers in order to show how many employees, if any, were adversely affected. There was a temporary work transfer that that letter refers to, Your Honor. Why can't the amount be shown at the compliance part of the process? Because it isn't remedy evidence, Your Honor. It is evidence of the basic elemental unfair labor practice that has to be proved at the initial proceeding. One of the cases that was a situation in which the employer at an enforcement proceeding tried to offer evidence that in fact the amount of work transfers were de minimis, and the board rejected that, claiming that that issue had already been fully litigated in the initial proceeding. It is our position that that issue, the fact of the adverse action, both its nature and extent, has to be established in the initial proceeding in order for an unfair labor practice to be proved. So let me ask you this. Are you saying that there is no substantial evidence to support the view that nobody would have been laid off exactly when the 22 employees were? There is no substantial evidence to support that view, Your Honor. And furthermore, even if there was substantial evidence to show somebody got laid off, excuse me, somebody wasn't recalled, the layoff theory was rejected by the board, that in fact we don't know whether it's one, five, eight, or all 22. And that's their burden, not ours. Now obviously there is, under the right line of cases, a secondary affirmative defense available to employers that when there is an adverse action, and in most right line cases somebody's been fired or terminated, so the adverse action is not in dispute, other than this factual record is different. In a normal right line case, there is a secondary affirmative defense available to the employer to argue that in fact the adverse action would have occurred for legal reasons and not because of their animosity or motive. But what happened here is that the nature and extent of the adverse action was not proved in the first place. And so the opportunity to provide that affirmative defense never arose. The case, frankly, didn't get to that point. Why can't you present that at the next step either? Under the Challenge Cook view, that would have been an element to have been decided at the first hearing. But if it wasn't decided at the first hearing, why can't it be dealt with in the remedies? Because of race judicata and collateral estoppel, those issues have been decided. No, I'm saying if it wasn't decided. Well, but if it wasn't decided, it's still an elementary part of their burden beyond which they can't proceed to an enforcement hearing. So are you saying that at least some of those 22 employees would have been laid off exactly when they were not later? Well, yes. What I'm saying is that the record shows that the company was overstaffed. And I don't know if they would have been laid off at that point, but their jobs were not eliminated by any action that was in retaliation for the strike. The company simply didn't bring them back because they didn't have enough work for them. But the point is that... But let me just go back to that for a minute. Isn't this simply a situation where the Board viewed the evidence differently than you do? Well, the Board certainly did view the evidence differently than we are, but it isn't simply that situation, Your Honor, because it is General Counsel's initial burden to establish that and quantify that for the Board and footnote 19 to the Board's decision where they say they essentially admit we do not have evidence in the record from which we can say how much work was transferred. That is the key point in this case in that footnote 19, and it is our contention that as a matter of law, that evidence has to come and it's General Counsel's burden to offer it within the initial unfair labor practice hearing that that cannot be of compliance. Now this case is on a narrow factual record. It will not have a great precedent because, as I said, most right-line cases involve terminations which are not disputed. But in a factual record like this, it is their burden to show the number of employees who are adversely affected, and then it's up to the employer as part of the affirmative defense to show that that adverse effect would have happened for legitimate reasons. But we didn't even get to that point here. If I can turn briefly to my second issue about whether Section 10e of the Act waives this argument, I suggest that it does not for two reasons. First, the issue was clearly raised before the Board. If you look at the exceptions that AMGLO filed that we cited in our brief and you look at the statements of General Counsel in which they claimed that they argued this work transfer issue before the Board, the issue was raised before the Board. Now the precise burden of proof argument I'm making today was not raised before the Board, but if you look at Local 900, 727 Fed 2nd, 1184, cited by this court in Wayne Transportation, 776 Fed 2nd, 745, the issue was raised before the Board. The precise issue doesn't have to be presented to the Board as long as the Board is aware that AMGLO was contesting the fact that work transfers had increased, and that issue certainly was before the Board. But the second reason is that 10e does not prevent us from arguing to this court that there is a failure of proof. That's a basic issue that's not waived. Would you like to save time for the overbudget? I would, Your Honor. Thank you very much. All right. Thank you. Ms. Sheehy? Good morning, Your Honors. May it please the Court. Barbara Sheehy for the National Labor Relations Board. I just want to take a step back and pick up on the argument about the 10e because that's the primary argument I think that the Board makes, or its initial to the actual merits of the claim about the nature and extent burden. So as the Board outlined in its brief, 10e of the statute operates as a jurisdictional bar, and it's typical in administrative proceedings, that you have to give the administrative agency the right in the first instance to pass on your claims before you go into a judicial arena and ask for the court to rule on those. And here what you have was sort of, I think the problem arose because you had an administrative law judge who did the initial findings, obviously, and didn't make, despite the allegations in the complaint, didn't make a finding that we're all talking about today, the actual transfer of work. So the administrative law judge makes specific findings. One of those, of course, was not, however, the transfer of work. Then there was the exceptions filed to the Board. The general counsel accepts to the administrative law judge's failure to make a specific finding about the unlawful transfer of work, and the Board rules on that. When the general counsel takes his exceptions, the employer has the opportunity, and in fact availed itself of that opportunity in this case, the employer had the opportunity to respond to the general counsel's exceptions. It was clear the general counsel outlined what he believed was the unlawful transfer of work, and the only response you saw in those papers, and we filed this as a supplemental appendix because it's not actually part of the record, what you saw from the employer there was only an argument that went to, was there an adverse action? Basically, when they say there was a minuscule amount of work that was transferred, that's attacking simply, was there a transfer of work? The general counsel is claiming yes, and the response from the employer was only, no, there wasn't. It was minuscule. That's effectively a de minimis argument, that there is no showing of an adverse action because we claim, the employer, was that there was only a minuscule amount of work. To be fair, that is an entirely different argument than what's before the court now, which is the general counsel needed to show at the hearing, this is what their argument is now, and this is not what was before the Board. You would have seen a very different decision out of the Board, I think. What they're claiming now is that the general counsel needed to show not only was there an adverse action, which we say there's not because it was minuscule, but on top of that, the general counsel having shown a transfer of work needed to also articulate in the liability phase, it's not analogous as opposing counsel just suggested to a civil proceeding because the Board has two separate proceedings, that's not the same as in the civil arena. The Board has a liability phase and a compliance phase. You have them now trying to say, not only did the general counsel need to prove an adverse action, a transfer of work, which there's substantial evidence in the record to support that, but the general counsel also needed in the liability phase to come forward and show exactly how many of the 22 employees who were never recalled would have not suffered the adverse action had they not engaged in the work stoppage. Do you disagree with that? Absolutely, the Board disagrees with that. On the merits, certainly we disagree because there's a compliance proceeding, but as an initial matter, the Board disagrees that they have preserved the claim in the first instance. The Board never had the opportunity to tell the employer in this case, because when they filed an answer to the general counsel's brief, they never articulated this defense. The Board never had the opportunity to say, no, sorry, employer, you are misunderstanding our bifurcated proceedings. You need, all the general counsel needs to do in the liability phase, and now we can move into the merits because I think I've articulated what the 10-year argument is, but what the Board would have done is articulate, as it's always done in right-line cases, here's what the general counsel has to prove in a right-line case. The general counsel has the burden to show that an adverse we very rarely have direct evidence, although we do in this case. The Board has a line of cases that talks about, listen, in the absence of direct evidence, here are some circumstantial things you can look for or look at to establish motive. Well, and we know in terms of the history of AIMGLO that they had a history of moving work from Illinois to Mexico, right? Absolutely. And do you dispute that this particular work would have eventually been moved to Mexico? I don't know that the Board disputes that. I think a fair reading of the Administrative Law Judge's factual findings and then the supplemental findings by the Board later shows that that wasn't, in this instance, historical practice notwithstanding. The Administrative Law Judge discredited, and to be fair, the Administrative Law Judge was looking more at the situation in terms of layoffs because that's how he viewed the case. He made very specific findings discrediting evidence of a plan for layoffs as it relates to this particular product at this particular time. Certainly there was evidence, employer documents that showed that, yes, it does have a history of transferring work, but in terms of the specific work transfer, a program that was in place or a plan that was in place, there is no finding by the Board, and I think it's implicit in footnote 19, actually. I view footnote 19 differently than the employer here. I think implicit in the Board's decision and a fair reading of the Administrative Law Judge's factual findings is that the Board rejected the notion that the employer showed that it had a plan now, that it was trying to invoke a past historical practice, that it's quite possible that in the future it was going to move these to Mexico at some point, but I think the Board is rejecting the notion that it could rely on generalized transfers in the past to show that on September 20th of 2011 that the work stoppage had nothing to do with the employer's decision at that time to transfer that work at that time to Mexico. Now the Board found in your favor relying in part on, like you mentioned, the suspicious to come to town the day before the strike in part to discuss future work transfers. That was claimed at the hearing. I believe the Administrative Law Judge discredits that testimony. I think there's a footnote in the Administrative Law Judge decision discrediting that. And then I just wanted to hit one thing on footnote 19. Our view of footnote 19 is typical in Board cases where you have three members that aren't necessarily agreeing on the full, it's like a concurring opinion, right? Footnote 19. So the only thing footnote 19 is showing is that Member Johnson is accepting the notion that there was a transfer plan, because if you read footnote 19, Member Johnson is saying, I don't think, or the only work that will be restored is that which wasn't slated to transfer to Mexico. Implicit in that in Member Johnson's opinion there, or his footnote there, is that he accepted the notion that there was a transfer plan. And I think that the fair reading of that then is that the Board majority rejects that notion. They do not say that the only work that will be restored is that which was not slated for Mexico. That's what Johnson said, Member Johnson says. So inherent in that then is, I think, the acknowledgement of the Board saying, we do not believe you showed that you had a transfer plan. Johnson obviously, I think, in footnote 19 articulates that he disagrees with that, but the Board majority opinion is that we don't buy that. Our order is any work that they can show in a compliance proceeding that was unlawfully transferred will be restored to the Illinois facility. Can we move to the compliance issue, because counsel says, look, that would be too late to raise these, the issues. I think, I think, I'd like, sure, they, I think that the, what's too late, and if the Court looks at Challenge, Challenge Cook Brothers of Ohio, what's too late in the compliance proceeding is to say, no, we didn't. So that's what the employer tried to do in Challenge Cook Brothers of Ohio. In fact, I think that case, if the Board, if the Court looks at it, I think it's incredibly instructive on what's going to happen in the compliance proceeding. In that case, you had an administrative law judge and a Board upholding the administrative law judge decision that there was an unlawful transfer of work from one facility to another. You had an appeal to the Sixth Circuit. Sixth Circuit upholds, sort of where we are here, asking for full enforcement like the Board did in Challenge Cook Brothers of Ohio. Once the Sixth Circuit enforced, you had a compliance proceeding. In a compliance proceeding, the employer and the Board, without Board, sort of the general counsel, rather, and the employer try to work out compliance. They try to figure out, okay, now that the end for labor practice is established and there's no going back to say, no, we didn't do it, so you can't come in the compliance proceeding and say, no, we didn't unlawfully transfer work, you can limit your liability to show we would have transferred 10 jobs anyway or 15 jobs or what it were, but what you can't do, and this is what the employer also tried to do in Challenge Cook Brothers of Ohio, was to say, no, we didn't transfer any work, and they offered generalized refutations of the back pay specification, and so that's what the employer here, if this court enforces the Board order, the employer, to be sure, will not be permitted during compliance to say, no, we didn't transfer any work because of an unlawful motivation. But your view is the details will be worked out at compliance of how much work was unlawfully transferred? Absolutely, absolutely, and that is standard. That's how the Board operates. We have a liability phase and then a compliance phase. So if AMGLO shows in compliance that six months after the strike, it would have laid off 11 workers for lawful reasons, how does it determine which workers get reinstatement and full back pay and which ones only get back pay for six months? That would be up to the compliance. It's not a unionized shop, so I don't know, I'm not familiar with the practices that are present there in terms of oftentimes seniority is going to dictate who comes back when. That would be up to the Board, the General Counsel, and the employer to work out which ones come back. I'm not, like I said, if it were a unionized shop, that'd be an easier question to answer, but it's not unionized, so I don't know how they determine. I suspect that it would be on the basis of entry on duty date, but I couldn't say for sure. So is your view that the Board would have worked out the numbers of people transferred or work transferred on lawfully if they had raised it, but because they didn't raise it, it's going to be done now at compliance? No, the Board wouldn't have addressed the numbers ever in the liability phase. You may have seen, I suppose, more particulars in the decision in terms of, you know, you might have seen a decision that said the General Counsel, the parties agreed that 10 jobs were lost because of the work stoppage, but you wouldn't, you still wouldn't have to find a specific, the Board wouldn't have had to make a specific finding in that regard. The Board never has to, in the liability phase, establish numbers. Whether it could have and maybe mentioned in the decision is a different matter, but it certainly, even if they had raised it, what you would have seen is the Board addressing the argument to say, no, employer, we don't have to quantify, at this point, the adverse action. We have to identify the adverse action, a transfer of work, and we have to look at whether or not the General Counsel has shown an unlawful motivation in that adverse action. So when they say that, they talk about the extent, nature and extent, you're saying you don't have to deal with the extent? Absolutely not. There's no case law that says that under right line, the General Counsel's burden is to establish the case law is very clear. The General Counsel has the burden to establish unlawful motivation and an adverse action. And it's only under the unlawful motivation where we see the other elements that the parties are talking about in their briefs. Now, a protected concerted activity, knowledge by the employer of that activity, and animus towards that activity. There is no cases, and if you read their brief, they're not. They try to bootstrap this idea of nature and extent through a causation analysis, but that's not what the right line cases say. That's not what board law says. Board law is very clear on what the General Counsel's burden is, and it's very clear that exactly what they're trying to do, and if the court looks at the Cook Challenge, Challenge Cook Brothers of Ohio, it's precisely in that case where the board there, in the compliance proceeding, references the liability phase and says an unspecified number of employees lost their jobs because of a transfer. It's exactly what we have here. And after the board found the liability in that case of an unspecified number of employees, just like we have here, they moved into a compliance specification to determine who are these people, who were the unspecified, let's identify the unspecified employees. The board did nothing different here than it does in general cases, particularly in the transfer of work violation. Unless there are any other questions? Thank you, and obviously we'd ask for full enforcement of the board's decision. Thank you, Ms. Sheehy. Mr. Hutchinson, how much time does he have? I would assume somewhere around four minutes or so. Your Honor, I only want to make a few brief points. When counsel was asked a moment ago what happens in the enforcement proceeding, she said that at that point in the proceedings it's too late for AMBLO to say no, we didn't increase work transfers in retaliation for the strike, and I agree with her. That would be too late at that point. Necessarily, then, the proof that yes, you did increase work transfers in retaliation for the strike must be part of the initial liability proceeding. That is initial liability evidence, without which there is no unfair labor practice proved, because the unfair labor practice has to interfere with employment in some way for an 8A1 violation to occur. So the point here is, well, all that happened in the proceeding to date... Why can't there be an unfair labor practice finding and then the extent of it, the numbers, be dealt with at the remedy stage? Yes, it can in one way, Your Honor, but that isn't what happened here. The problem here is that there was no showing that work transfers were increased or that anybody was affected. You can't, at the nub of it, they have to show at least that. They have to show at least that the work transfers were at 10 units before the strike and went to 12 after, or went to 15 after, and that that correlates with 5 employees or 10. The essence of the remedy's evidence at a compliance proceeding is, have those people found new jobs? What are the good payments owed to them? What's the seniority in which they're reinstated? How much work has to be retransferred back? That sort of thing, but all that happened below here was that there was evidence of motive and evidence that some work transfers were going on, but no evidence of any increase in the rate of those transfers, and that's the critical fact that's missing. So the fact that the president and plant manager admitted that the move was motivated by the strike, and the letter given to the 22 workers said they were not being reinstated because of the move, and the fact that the board found it was the entire transfer which affected the 22 workers were unlawful, you just... The board didn't, that proves motive, that proves motive in spades, but the board did not have evidence that 22 workers were not reinstated because of the strike. The board did not have evidence that the work transfers were increased by that amount. That is the finding of the board that we are objecting to as being unsupported by substantial evidence. And in a case like this, where the entire matter turns on whether there is an increase in the rate of work transfers that affects employees adversely, you've got to show the increase in the rate, and that just wasn't done here. Now the only other point I'd like to make is, council seems to think that it's up to AMBLO to refute that all they've got to show is the fact of some transfers, and it's up to AMBLO to refute the amount of the transfers. No, that's an attempt to shift their burden to us. Their burden is to show the nature of the adverse action and the extent, in other words, they've got to show under 8A1, that there was an interference with some employment relationships, in other words, jobs, and they've not shown that. Thank you very much. All right, thank you Mr. Hutchinson. The case will be taken under advisement, and the next case...